JEWETT, RECEIVER of the Erie Railway Company, vs. DRINGER AND BOWMAN.

1. An attachment as for contempt was discharged, where the complainant had failed to exhibit interrogatories within the time limited by the rule, and a long time had elapsed since the expiration of the period within which, according to the rule, the interrogatories should have been filed.

2. An application for further time to exhibit interrogatories, not made until the making of a motion to discharge for non-observance of the rule, was, under such circumstances, refused.

3. The court will hold an injunction until the hearing, in its discretion.

4. In suits instituted for the purpose of impeaching transactions on the ground of fraud, reasonable distinctness and particularity in the averments and charges is required.

Motion on behalf of Dringer to dissolve injunction and to discharge the attachment against him, and counter-motion on behalf of complainant for further time to exhibit interrogatories under the attachment.

*Mr. J. W. Griggs*, for Dringer.

*Mr. Cortlandt Parker*, for complainant.

THE CHANCELLOR.

The motion for further time to file interrogatories under the attachment against Dringer as for contempt, will be denied. The provision of the rule on the subject of attachments, requiring that interrogatories be exhibited within a limited time, has not been observed, and a long time has elapsed since the expiration of the period within which, according to the rule, the interrogatories should have been filed. No application was made for further time until the making of the motion to discharge for non-observance of the rule. It would be unjust to Dringer, under the circumstances, to hold him longer under the attachment, or to subject him to disability in this court, now, by reason of it. The attachment will be discharged.

When the former motion to dissolve the injunction was made, Bowman's answer was not in. Now that it has been filed, Dringer renews the motion. The case for an injunction made by the bill and the affidavits annexed thereto, has not been overthrown by the answers. I am not satisfied of the *bona fides* of the dealings between Dringer and Bowman, especially the sale of the seventeen hundred tons of old car wheels. Dringer bid for these materials, in June, 1875, $22 a ton, according to the bill, (according to the statements of the defendants, $21 a ton,) on terms of payment which required fifteen per cent. in cash at the time of the award, and the balance in cash at the time of delivery. After the award had been made, the general superintendent, being unwilling to give Dringer credit, forbade Bowman to deliver the materials to him, except for cash on delivery. Bowman, on the 9th of July following, sold the materials to Dringer at $19 a ton, payable on or before delivery, and subsequently delivered them to him. Bowman says that this latter sale was approved and sanctioned by the general superintendent, but that officer,

in his affidavit appended to the bill, swears that it was without his authority. Dringer's account of the transaction is, that his bid was on terms of payment of fifteen per cent. of the price in cash on the making of the award, and the rest in cash on delivery ; that the complainant refused to let him have the property unless he would pay the price in full before delivery ; that he would not have bid so high a price as $21 a ton if he had been required to pay before delivery, and that he afterwards agreed with Bowman to pay $19 a ton, payable before delivery. Bowman, in his answer, says that the general superintendent refused to permit the delivery of the materials to Dringer, unless the latter would pay the price in full, at or before delivery, and that his orders were not to allow the delivery of the materials until and except as they were paid for. It will be perceived that the new terms, as stated by him, were not only not more stringent than those on which the bid was made, but were, in fact, less so ; for the latter required the payment of fifteen per cent. at the time of making the award, and the balance on delivery, while the new ones only required payment of the whole price at or before delivery, and it appears by Dringer's answer that the seventeen hundred tons, above mentioned, were not, in fact, wholly paid for before, nor even on delivery. According to his own account, they were all delivered before the 12th of August, and yet $10,000 of the price (all of the payments on account of which were made by check delivered to Bowman,) were not paid until the 1st of September following. It appears by the affidavit of the general superintendent, before referred to, that Bowman gave as his reason for lowering the price from $22 to $19 a ton, not the increased stringency in the terms of payment, but the fall in the price of iron in the market. It is very clear that the refusal to permit the delivery to Dringer, unless payment were made at the time, was, as Bowman knew, want of confidence in his pecuniary responsibility. Yet it appears that Bowman not only, in violation of specific orders, gave Dringer credit to the extent of $10,000, at least, in the transaction of the sale and delivery of the seventeen hundred

tons of old car wheels, but also subsequently sold materials to him on credit—on the 2d of September, 1875, to the value of $2280, and on the 9th of October following, to the amount of $9468, out of a bill of $24,468. Dringer's indebtedness for materials sold to him by Bowman amounted, at the time of filing the bill, to more than $35,000. Bowman, indeed, in his answer, says that all the materials sold by him to Dringer were paid for, and he imputes the indebtedness to sales made by other persons, but Dringer does not say so. On the contrary, it appears from his answer, that it was contracted through Bowman. The very existence of a very large part of it was unknown to the complainant and his officers, until about the time of filing the bill. It had not been reported. On this head, Dringer says, in his answer, that he has been informed, and believes, and therefore admits it to be true, that, in some instances, there has been a failure on the part of some or one of the agents of the complainant, or of the company, to keep full and correct accounts of all the materials sold and delivered to him. Before deciding as to the character of the transaction of the sale of the seventeen hundred tons of old car wheels, it is proper to await the developments of the proof in the cause.

But there are other considerations to be taken into account in disposing of this motion. Dringer, in his answer, offers to pay the amount of what he states to be his indebtedness (between $36,000 and $37,000,) to the complainant, in the materials bought through Bowman, either at the price at which he purchased them, or at the present market price. That indebtedness, as stated by him, far exceeds the amount which the complainant's books show against him. This is, in effect, an offer to return materials to the amount of the indebtedness, and I see no good reason why it should not be accepted. If it be accepted, the complainant's demand will consist of a claim to an account for a higher price for the other materials, or some of them, (he has already received on account of them $61,630,) than that at which they were sold by Bowman to Dringer, and an account for the price of

materials sold by the former to the latter, and not yet accounted for at all. There does not appear to be any property wholly unaccounted for, and the only sale specified in the bill is that of the seventeen hundred tons of old car wheels, the difference claimed by the complainant in respect to which is $5100.

In dealing with the rights of parties in such a case as this, regard will be had to the rule which, for the just protection of defendants, requires reasonable distinctness and particularity in the averments and charges in suits instituted for the purpose of impeaching transactions on the ground of fraud, and refuses judicial action when invoked upon suspicion merely.

On Dringer's returning to the complainant materials, as proposed in his answer, at cost, (or at the present market value, if that be lower than the cost,) to the amount of the indebtedness admitted by him, and giving proper security in the sum of $15,000, to abide by and perform the decree of this court in this action, if it be adverse to him, the injunction will be dissolved. Such return will not prejudice his defence in this suit.